UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

STEVEN LEE LINDSEY and
KAYSANNDRA LORENE LINDSEY,                                    Plaintiffs,

v.                                                Civil Action No. 4:23-cv-10-DJH-HBB

RYAN BAILEY and CHRISTOPHER
ROUSH,                                                         Defendants.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiffs Steven Lee Lindsey and Kaysanndra Lorene Lindsey sued Defendants Ryan Bailey and Christopher Roush under 42 U.S.C. § 1983, asserting violations of their Fourth Amendment rights.  (Docket No. 1)  This matter is now before the Court on the plaintiffs' objections to U.S. Magistrate Judge H. Brent Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation that the defendants' motion for summary judgment be granted.  (D.N. 26; *see* D.N. 25)  After careful consideration, the Court will adopt in full Judge Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation and grant the defendants' motion for summary judgment for the reasons set forth below.

**I.**

Officers Bailey and Roush were dispatched to the plaintiffs' home on February 20, 2022, to perform a welfare check after a neighbor reported that Mr. Lindsey was suicidal and that Mrs. Lindsey was "intoxicated, wheelchair bound, and home alone with their minor child."  (D.N. 18-3, PageID.73 ¶ 3)  Roush arrived at the scene first and talked to Mr. Lindsey on the driveway to explain why he was present.  (D.N. 23)  In response, Mr. Lindsey stated that everything was fine

1

and emphasized that Roush was not permitted to enter the home. (*Id.*) But Mr. Lindsey then indicated that Roush could go to the front door. (*Id.*)

Once Bailey arrived, Roush and Bailey walked to the front door. (*Id.*) Mr. Lindsey helped Mrs. Lindsey open the door, and Roush spoke to Mrs. Lindsey. (*Id.*) Mrs. Lindsey stated that Mr. Lindsey had "threatened self-harm." (D.N. 23; *see also* D.N. 18-4, PageID.106) The plaintiffs' seven-year-old son interrupted, saying, "at first we thought that he went out and killed himself." (D.N. 23) When Roush asked, "what did he say he was going to do?," Mrs. Lindsey replied, "kill himself." (*Id.*) The plaintiffs' son added, "he just doesn't want to be on this planet." (*Id.*) The defendants subsequently asked Mr. Lindsey to step outside to talk to them, but Mr. Lindsey refused. (*Id.*) After Mrs. Lindsey said, "I'm scared," Roush replied, "I understand, we need to come in the home . . . to sort some things out." (*Id.*) As Roush entered the doorway, Mr. Lindsey ran into another room and racked a shotgun, leading the defendants to retreat to their vehicles for cover. (*Id.*) The plaintiffs then sued Bailey and Roush pursuant to § 1983, asserting violations of their Fourth Amendment rights when the defendants entered their home without a warrant. (D.N. 1) The plaintiffs now object to Judge Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation that the defendants' motion for summary judgment be granted. (D.N. 26; *see* D.N. 25)

## II.

When reviewing a report and recommendation, the Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion to which no objection is made. *See Thomas*, 474 U.S. at 150. Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge

with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Judge Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation to which the plaintiffs object.

**A.      Fourth Amendment Violation**

The plaintiffs first object to Judge Brennenstuhl's conclusion that there were exigent circumstances which provided an exception to the warrant requirement. (D.N. 26, PageID.247) Pursuant to the Fourth Amendment, officers must generally secure a warrant before "enter[ing] a home without permission." *Lange v. California*, 594 U.S. 295, 301 (2021). But "there are some exceptions to the warrant requirement . . . , including an exception for 'exigent circumstances.'" *Reed v. Campbell Cnty.*, 80 F.4th 734, 743 (6th Cir. 2023) (quoting *Lange*, 594 U.S. at 301). This exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Kentucky v. King*, 563 U. S. 452, 460 (2011). "[T]o satisfy the exigent-circumstances exception," officers must have had an objectively reasonable basis for believing that "there was a risk of serious injury posed to himself or his fellow officer or others that required swift action." *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008); *see also Reed*, 80 F.4th at 743. Courts consider the totality of the circumstances to determine whether exigent circumstances were present. *Ziegler*, 512 F.3d at 785.

The threat of suicide has been considered an exigent circumstance when "there is a high risk of commit[ting] the dangerous act," and the officer "received information from a credible source, or sources, that an individual is a suicidal risk." *Id.* In *Ziegler*, the Sixth Circuit found an exigent circumstance justifying a warrantless entry after a 911 caller stated that the plaintiff was suicidal and that "there was a clinical certificate ordering [an officer] to take [him] to the hospital." *Id.* The court reasoned that, based on the information provided by the 911 call, a reasonable officer

would be justified in inferring that the "[p]laintiff was at a high risk to commit the dangerous act." *Id.* Moreover, the information was credible, particularly because a "hospital classified [the] [p]laintiff as suicidal." *Id.*

The plaintiffs argue that the defendants did not have an objectively reasonable basis for believing that Mr. Lindsey was at risk of self-harm because Mrs. Lindsey's statement that he would "kill himself . . . by not eating" is insufficient. (D.N. 26, PageID.247) But Mrs. Lindsey also told the defendants that Mr. Lindsey himself "threatened self-harm" and stated that he was going to "kill himself." (D.N. 23) Statements such as these indicate a "high risk of commit[ting] the dangerous act" and "increase[] the likelihood that [Mr. Lindsey] had a mental state that required immediate attention." *Ziegler*, 512 F.3d at 785. Moreover, the presence of Mr. Lindsey's young son under these circumstances likewise increased the risk of serious injury posed to an occupant. *Id.* Further, the information the officers received regarding Mr. Lindsey's mental state was credible because three known individuals (Mrs. Lindsey, the plaintiffs' son, and the plaintiffs' neighbor) communicated similar information (D.N. 23). *See Ziegler*, 512 F.3d at 785; *see also United States v. Guzman*, No. 24-1236, 2025 U.S. App. LEXIS 1968, at *13 (6th Cir. Jan. 27, 2025) (noting that "multiple sources providing the same information[ ] increas[ed] the likelihood" of reliability in the context of informants and probable cause). Officers therefore had an objectively reasonable basis for believing that there was a "risk of serious injury" to an occupant in the plaintiffs' home which "required swift action."[1] *Ziegler*, 512 F.3d at 785.

---

[1] Although the plaintiffs attempt to distinguish *Ziegler* (D.N. 26, PageID.247), the Court finds this argument unpersuasive. According to the plaintiffs, *Ziegler* does not "bear any resemblance" to this case because in *Ziegler*, "the plaintiff openly stated to medical staff that she was going to kill herself[,] and the medical staff reported that she was a danger to herself." (*Id.*) But *Ziegler* nonetheless stands for the proposition that the threat of suicide can be an exigent circumstance so long as the information is credible, and "there is a high risk of commit[ting] the dangerous act." *Ziegler*, 512 F.3d at 785. This is the case here.

### B. Municipal Policy or Custom

Next, the plaintiffs object to Judge Brennenstuhl's conclusion that the plaintiffs failed to establish that any violations of their constitutional rights were due to a municipal policy. (D.N. 26, PageID.247–48) As an initial matter, the plaintiffs do not object to Judge Brennenstuhl's finding that the plaintiffs sued the defendants in their official capacity only. (D.N. 26) "To succeed on [an official capacity] claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010).

The plaintiffs contend that they are not required to show that any deprivation of a constitutional right was due to a municipal policy or custom because they have not sued Hopkins County or any government entity. (D.N. 25, PageID.243–44) But the plaintiffs are mistaken. Because the plaintiffs' claims against the defendants are official capacity claims, they are treated as claims against Hopkins County. *See Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 598 (6th Cir. 2025); *see also Browder v. Hopkins Cnty.*, No. 24-5177, 2024 U.S. App. LEXIS 23584, at *4-5 (6th Cir. Sep. 16, 2024). "[A] municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Whether or not the plaintiff joined the municipality to the lawsuit does not modify the analysis. *See Stiltner v. Donini*, No. 20-4136, 2021 U.S. App. LEXIS 23698, at *4 (6th Cir. Aug. 9, 2021) (treating the plaintiff's claims as claims against the county when only employees of the county were sued). In any event, the plaintiff's argument, even if successful, would not alter the conclusion that there

was no Fourth Amendment violation. (D.N. 25, PageID.244) Without a constitutional violation, a § 1983 claim based on a constitutional violation fails. *Susselman v. Washtenaw Cnty. Sheriff's Office*, 109 F.4th 864, 870 (6th Cir. 2024).

In light of the conclusions reached above, the Court will overrule the plaintiffs' objections (D.N. 26), adopt in full Judge Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation (D.N. 25), and grant the defendants' motion for summary judgment. (D.N. 18)

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The plaintiffs' objections to Judge Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation (D.N. 26) are **OVERRULED**.

(2) Judge Brennenstuhl's Findings of Fact, Conclusions of Law, and Recommendation (D.N. 25) are **ADOPTED** in full and **INCORPORATED** by reference herein.

(3) The defendants' motion for summary judgment (D.N. 18) is **GRANTED**. A separate Judgment will be entered this date.

May 22, 2025

David J. Hale, Judge
United States District Court